IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JOHN T. HARMON,

      Plaintiff

   VS.

WILLIAM TERRY, *et al.*,

      Defendants

NO.  5:08-CV-157 (CAR)

PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE

# RECOMMENDATION

  Pending before the court is defendants TERRY, PERRY, and DUCOTE'S motion seeking dismissal. Tab #12.  In that motion, they contend that plaintiff JOHN T. HARMON failed to exhaust the administrative remedies available to him before filing this federal suit, and that, in any event, he has failed to state a constitutional claim.  Plaintiff HARMON was ordered to and has responded to this motion. Tab #21.

**LEGAL STANDARDS**

FAILURE TO STATE A CLAIM

  A complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6), if it does not "state a claim upon which relief can be granted." When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations in the complaint must be accepted as true, with all reasonable inferences construed in the light most favorable to the plaintiff. *Wagner v. Daewoo Heavy Industries America Corp.*, 289 F.3d 1268, 1270 (11th Cir. 2002), *vacated on other grounds*, 298 F.3d 1228 (11th Cir. 2002); *See also*, *Beck v. Deloitte & Touche*, 144 F. 3d 732, 735 (11th Cir. 1988). Conclusory allegations and unwarranted deductions of fact, however, are not admitted as true. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). Moreover, "[a] complaint is subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Alabama*, 268 F. 3d 1014, 1022 (11th Cir. 2001) (*en banc*) (citing *Quiller v. Barclays American/Credit, Inc.*, 727 F. 2d 1067, 1069 (11th Cir. 1984) *vacated on petition for rehearing*, *reinstated by* 764 F. 2d 1400 (11th Cir. 1985)).

EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act of 1995 ("PLRA") mandates that before an incarcerated plaintiff can bring any action under Section 1983, he must exhaust all of the available administrative remedies available to him. 42 U.S.C. §1997e(a). The Eleventh Circuit has also made it clear that exhaustion of available administrative remedies is a precursor to a prisoner's filing a civil rights action, even when the administrative procedures set forth by the prison are futile or inadequate. *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998).

**FACTUAL BACKGROUND**

Plaintiff JOHN T. HARMON, an inmate in the custody of the Georgia Department of Corrections, has brought the instant action pursuant to 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights by failing to quickly deliver his legal mail to and from the state courts, resulting in the dismissal of his direct appeal and the denial of his motion for reconsideration thereon.

The facts surrounding the filing of his direct appeal and the dismissal thereof are as follows: On December 13, 2007, the trial court where the plaintiff had been sentenced entered an order denying the plaintiff's motion seeking to correct the allegedly void or illegal sentence given him following a 1998 guilty plea. Unhappy with this result, plaintiff HARMON sought to appeal this denial to the Georgia Court of Appeals. In doing so, plaintiff prepared and gave the envelope containing his appeal, as well as his application for indigent postage, to prison officials on January 7, 2008. According to prison policy, defendant DUCOTE brought plaintiff's outgoing mail and application for indigent postage to the prison business office so that his application for indigent postage could be processed and approved. The indigent postage application was received by the business office and was approved on January 14, 2008. Three (3) days later, on January 17, 2008, plaintiff's appeal was received and docketed by the Georgia Court of Appeals.

In an Order dated February 29, 2008, the Georgia Court of Appeals dismissed plaintiff HARMON'S appeal as untimely because it was filed more than thirty (30) days after the entry of the order he was seeking to appeal. Plaintiff received this order of dismissal on March 11, 2008. On March 13, 2008, the Georgia Court of Appeals received plaintiff HARMON's motion seeking reconsideration of the earlier order dismissing his appeal. On March 21, 2008, the Georgia Court of Appeals denied as untimely plaintiff's motion seeking reconsideration because it was not filed within ten (10) days of the date of the above mentioned dismissal order. Thereafter, on May 7, 2008, plaintiff filed the instant action.

In his complaint, the plaintiff HARMON complains about two incidents. The first incident involves the mailing of his initial application for appeal. According to the plaintiff, defendant DUCOTE improperly held the application for nine (9) days before mailing it to the appellate court. The second incident involves defendant DUCOTE's delivery of the appellate court's dismissal of the original appeal as untimely. In this instance, the plaintiff claims that defendant DUCOTE held the court's order until March 11, 2008, more than ten days after its entry, making a timely motion for reconsideration impossible.

With regard to grievances, plaintiff HARMON has attached copies of two informal and one formal grievance that he had filed with regard to the prison's mail processing. The first informal grievance was dated December 26, 2007. In this grievance, plaintiff HARMON complained that the prison's policy of allowing indigent mail to be sent to the courts only once per week denied him adequate access to the courts. On the informal grievance form appear notations which indicate that plaintiff HARMON discussed the issue with a counselor, was notified that he could drop his mail in the library Tuesday through Friday, and that he signed off that his complaint had been resolved.

The second informal grievance is dated January 18, 2008.  In this grievance, plaintiff HARMON alleges that prison administrators, in an attempt to deny him access to the courts, were conspiring to stop the delivery of his indigent mail.  On January 31, 2008, after discussing this second grievance with a counselor, plaintiff HARMON asked to file a formal grievance.  Later that date, plaintiff HARMON signed and submitted a formal grievance form containing substantially the same complaint about the above alleged conspiracy.  The formal grievance form indicates that the warden received the grievance on February 15, 2008.  That same date, the warden determined that prison policy had been followed in processing plaintiff HARMON'S indigent mail and denied the grievance.  The formal grievance form contains a section giving instructions on how to appeal a denial of the formal grievance.  The form also contains a section wherein the Executive Assistant in the Commissioner's Office records the date the form was received as well as a place for a response and signature.  On the form that plaintiff HARMON attached to his Complaint the Commissioner's section is blank.

## DISCUSSION

After being notified of and waiving service of the instant action, the defendants responded by filing the pre-answer motion seeking dismissal currently under consideration.  Therein, the defendants claim that plaintiff HARMON has failed to exhaust his administrative remedies as to both claims, that he cannot state a claim against defendant Terry and Perry on a theory of vicarious liability, that the he has failed to state a constitutional claim against *any* of the defendants, that they are entitled to qualified immunity, and that, in their official capacity, they are not persons capable of being sued under §1983. The undersigned will address each if these contentions separately.

EXHAUSTION

As discussed in the above section entitled Factual Background, plaintiff's first claim involves the contention that the defendants conspired to block his access to the court's by failing to quickly deliver his legal mail to and from the courts. It is undisputed that the plaintiff filed both an informal and formal grievance with regard to this claim. The remaining issue, however, is whether the plaintiff appealed the denial of the formal grievance; the defendants contend that plaintiff did not. In support of this contention, the defendants rely upon an affidavit wherein defendant PERRY reviews the grievance process, plaintiff HARMON's history of institutional grievances, and swears that the instant formal grievance was never appealed beyond the institutional level thus making it unexhausted. In response, plaintiff HARMON contends, *inter alia*, that he did, in fact, appeal the denial of his formal grievance to the Commissioner's office by timely placing an envelope containing the grievance and a completed appeal form in an institutional mailbox as instructed by counselor Hill. Having carefully considered these as well as all of the other arguments put forth on this point, the undersigned finds that, with regard to the plaintiff's first claim, he has exhausted his administrative remedies.

With regard to the plaintiff's second claim, it is clear that at the time this action was filed plaintiff HARMON had not filed any grievance with regard the timeliness of his receipt of the dismissal of his motion for reconsideration. The fact that the two claims are related insofar as they both concern the timeliness of mail delivery is insufficient as the two events alleged by the plaintiff occurred at different times and because the first events involved the additional steps of applying for and being approved for indigent postage. As such, the undersigned finds that the plaintiff's second claim is unexhausted and should be dismissed.

FAILURE TO STATE A CLAIM / VICARIOUS LIABILITY

Defendants PERRY and TERRY contend that the plaintiff's claims against them on the basis of vicarious liability must be dismissed. According to these defendants, in order for them to be held liable, the plaintiff must allege that they actually participated in the alleged violation or that they exercised control or discretion over the alleged violation. These defendants go on to state that while personal participation by a supervisory official is not necessary to establish liability, without it the plaintiff must demonstrate a causal connection through other means. Specifically, these defendants aver that in order to prevail, the plaintiff must show either a history of widespread abuse that puts the responsible supervisor on notice to correct the alleged deprivation or a supervisor's custom or policy which results in deliberate indifference to constitutional rights. These defendants aver that plaintiff HARMON has failed to make allegations sufficient to satisfy any part of the above standards.

In reviewing this argument by defendants PERRY and TERRY, as well as the plaintiff's responses thereto, it appears that plaintiff HARMON has alleged dozens of instances wherein inmates experienced and then filed grievances relating to the improper handling and delay in the processing of their legal mail. In addition, plaintiff has provided a list of inmates who, he claims, would be willing to testify as to the same allegations that plaintiff is asserting as well as to the fact that defendants Terry and Perry were on notice of the problem by virtue of the fact that they routinely reviewed and denied grievances to the same effect. If proven true, these allegations appear to be sufficient to give rise to liability on the part of defendants Perry and Terry. Because, in the context of a motion to dismiss, the court must take the facts as alleged by the plaintiff as true, the undersigned cannot agree that the claims against defendants Terry and Perry should be dismissed on this basis.

### FAILURE TO STATE A CONSTITUTIONAL CLAIM

Defendants next contention is that the plaintiff has failed to sufficiently state a constitutional claim of denial to access to the courts. The undersigned disagrees. Plaintiff's allegation is that he presented an article of legal mail to defendant Ducote to be mailed. Plaintiff next claims that defendant DUCOTE, in violation of department of corrections SOPs and the plaintiff's constitutional rights, intentionally held the article for several days before presenting it to the business office for postage and mailing. This delay, according to the plaintiff, eviscerated his right to direct appeal as the appeal contained in the article of mail was dismissed by the appellate court as untimely filed.

The defendants contend that the above set of allegations, even if true, are not sufficient to state a claim. This conclusion, the defendants argue, is because any delay in delivering the plaintiff's mail was, at most, negligence on the part of defendant DUCOTE and thus not actionable under §1983. In support of this averment, they rely upon the case of *Richardson v. McDonnell*, 841 F.2d 120 (5th Cir. 1988). In the defendants' recount of *Richardson*, the plaintiff therein handed over two articles of legal mail containing applications for writs of habeas corpus to a prison official for mailing. The prison official placed the two articles of mail on a mail cart. The articles of mail were never delivered. The plaintiff filed suit alleging that because his legal mail was not delivered, his right of access to the courts had been abridged. The circuit court upheld the district court's decision to grant the defendants' motion for summary judgment on the basis that the plaintiff had failed to show that his mail was intentionally lost or destroyed. Accordingly, the defendants in this case contend that the instant action should meet a similar fate.

However, the defendants appear to have completely ignored pertinent language *Richardson.* The ruling in *Richardson* relies largely upon the court's previous ruling in the case of *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986). In *Jackson*, the court held that a §1983 cause of action could be stated where the allegations included a prison official's intentional withholding of mail destined for the courts as well as the allegation that the delay *actually* damaged the prisoner's legal position. In *Richardson,* the plaintiff failed to meet these requirements because he learned that his writs had not been delivered and was able to and did timely prepare and file new writs. Such a conclusion cannot be reached in the instant case.

In the case at bar, plaintiff HARMON alleges that his legal mail was intentionally withheld. Moreover, he has shown that while he was able to and did learn that his mail was not timely delivered, he, unlike the plaintiff in *Richardson*, was unable to remedy this delay by timely preparing and filing a new appeal. Plaintiff herein has alleged specific damage as the result of the actions of defendant DUCOTE. For these reasons, the undersigned concludes that plaintiff HARMON has stated a claim cognizable under 42 U.S.C. §1983.

## QUALIFIED IMMUNITY

Defendants next claim that they are entitled to qualified immunity. The undersigned disagrees. While it appears that the defendants were, with regard to the plaintiff's allegations, acting within there discretionary authority, the undersigned does not agree that the plaintiff's allegations fail to state a constitutional violation or that the violation was not clearly established. As such, the undersigned rejects the defendants's argument that they are entitled to qualified immunity.

OFFICIAL CAPACITY CLAIMS

Defendants contend that the plaintiff's claims, to the extent that they are brought against them in their official capacity, are improper. This conclusion is based upon the statutory language of §1983 which proscribes certain actions by a person or persons. Since the defendants, in their official capacities, are not persons under §1983, the undersigned agrees that the claims against them in their official capacities should be dismissed.

**CONCLUSION**

In accordance with above analysis, **IT IS RECOMMENDED** that the defendants' MOTION TO DISMISS be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim that his constitutional right of access to the courts was violated with regard to the delivery of his direct appeal to the Georgia Court of Appeals should be permitted to go forward against all defendants.

"AMENDED CLAIM" AND MOTION TO DISMISS

Also before the court is an "amendment" by the plaintiff (Tab #26) and a motion by the defendants seeking the dismissal of the plaintiff's amended claim (Tab #27). In his amendment, plaintiff HARMON essentially restates his access to court claim and contends that, in addition to his rights under the First Amendment, the defendants' actions violated his rights under the Fifth and Fourteenth Amendments. In their motion seeking to dismiss plaintiff's amended claim, defendants renew the arguments that were set forth in their first motion seeking dismissal. As the alleged actions by the defendants remain the same, and because the precise constitutional basis for an access to the courts claim is unsettled, further analysis is unnecessary.

Accordingly, **IT IS RECOMMENDED** that the defendants' motion seeking to dismiss the plaintiff's amended claim (Tab #27) be **DENIED** as moot.

Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to the **RECOMMENDATIONS** herein made with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

**SO RECOMMENDED** this 6th day of MARCH, 2009.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE