THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **JOHN T. HARMON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 5:08-cv-157 (CAR) |
| **WILLIAM TERRY,** *et al.,* | : | |
| | : | |
| **Defendants,** | : | |
| | : | |
| _____ | : | |

*ORDER ON THE RECOMMENDATION OF*
*THE UNITED STATES MAGISTRATE JUDGE*

This case is before the Court on the Recommendation of the United States Magistrate Judge (Doc.40), recommending that Defendants' Motions to Dismiss be granted in part and denied in part. Upon a *de novo* review of the Recommendation, of Defendants' objections to the Recommendation, the pleadings and affidavits in the record, and the relevant legal authorities, the Court agrees with the findings of the Magistrate Judge. Accordingly, the Recommendation is **HEREBY ADOPTED AND MADE THE ORDER OF THE COURT**.

Plaintiff is an inmate at Macon State Prison in Oglethorpe, Georgia. In his Complaint, Plaintiff alleges that officers of the prison denied his constitutional right to access to the courts by intentionally delaying his correspondence with the Georgia

Court of Appeals on two separate occasions. The first alleged incident concerns Plaintiff's attempt to appeal a trial court's order denying his motion correct an illegal sentence. The trial court denied his motion on December 13, 2007. Plaintiff's deadline for appeal was thirty days after the entry of the order denying his motion. On January 7, 2008, Plaintiff placed his appeal in the prison's mail system; however, it was not "processed" and approved for mailing until January 14, the day his appeal was due to be filed.[1] The appeal was received by the Court of Appeals on January 17, 2008, and was dismissed as untimely.

The second incident concerns Plaintiff's attempt to file a motion for reconsideration of the dismissal of his appeal. The order dismissing his appeal was entered on February 29, 2008. Plaintiff did not receive the order until eleven days later, on March 11, 2008, by which time the ten-day period for filing a motion for reconsideration had expired. He filed a motion for reconsideration nevertheless, and it was also denied as untimely.

In their Motions to Dismiss, Defendants contend that Plaintiff's claims should be dismissed on four grounds. First, Defendants contend that Plaintiff has failed to exhaust his administrative remedies. Second, Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted because his claims against

---

[1] The Court takes judicial notice of the fact that January 12, 2008 was a Saturday.

Warden William M. Terry and Deputy Warden Clinton Perry, Jr., are based on a theory of *respondeat superior* that is not recognized under Section 1983. Third, Defendants contend that Plaintiff has failed to state a claim upon which relief may be granted because Plaintiff alleges merely negligence rather than intentional misconduct. Fourth, Defendants contend that they are protected by qualified immunity. Each of these contentions is without merit and none warrants dismissal of Plaintiff's claims at this stage of the litigation.

1.  **Exhaustion of Administrative Remedies**

As to Defendants' first contention, the Court agrees with the finding of the Recommendation that Plaintiff has exhausted his administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), an inmate must exhaust available administrative remedies before filing a suit in federal court. Failure to exhaust administrative remedies is an affirmative defense available to defendants under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 n. 9 (11th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). Exhaustion is not a jurisdictional prerequisite. Id. at 1374 n. 10 (citing Woodford v. Ngo, 548 U.S. 81, 110 (2006)). As such, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints," but need only respond if a defendant raises failure to exhaust as an affirmative defense. Id. at 1374 n. 9.

When a defendant raises the defense of failure to exhaust, courts review the motion through the two-step process outlined by the Eleventh Circuit in Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. at 1082. If the complaint is not subject to dismissal when the plaintiff's version of facts is accepted as true, the court must proceed to the second step, making specific findings of fact to resolve the disputed factual issues related to exhaustion. Id. At this second stage of the analysis, it is the defendant's burden to prove that the plaintiff has failed to exhaust his available administrative remedies. Id. There is no requirement that the court conduct a hearing before resolving the disputed factual issues raised in such a motion to dismiss. Both Turner and Bryant were decided on the basis of affidavits submitted by the parties.

In this case, taking the Plaintiff's version of the facts as true, dismissal is not warranted as to the mailing of Plaintiff's appeal, but is warranted as to Plaintiff's motion for reconsideration. As to the first incident involving his attempt to file an appeal, Plaintiff contends that he exhausted all the remedies by filing two informal grievances and one formal grievance. All were summarily rejected. In an affidavit submitted in response to Defendants' motion to dismiss (Doc. 22), Plaintiff testifies

that he then met with a counselor regarding the process for appealing the denial of his grievance. The counselor instructed Plaintiff to seal the denied appeal form in a pre-printed envelope addressed to the Grievance Coordinator and place the envelope in institutional mail. In his Response Brief (Doc. 21), Plaintiff states that he placed the appeal in the mail as directed, but never received a response.

Defendants concede that Plaintiff filed the two informal grievances and the formal grievance according to procedure, but deny that Plaintiff filed an appeal after his formal grievance was denied. In support of their contention, Defendants have submitted the affidavit of Clinton Perry (Doc. 12 Ex. A). Perry testifies that copies of all grievances are kept at the prison and also entered into the Statewide Grievance Management System. He does not directly state, but clearly implies, that no copy of an appeal exists in the prison files. He states that Plaintiff "did not file an appeal [and] did not exhaust his administrative remedies." Id. ¶ 12.

In resolving this factual dispute as required by Bryant and Turner, the Court finds that Defendants have failed to meet their burden of demonstrating that Plaintiff failed to exhaust his administrative remedies. Based on the evidence before the Court, it is more reasonable to believe that Plaintiff did file the appeal as he testified. As Defendants suggest in their own arguments, it is apparent that Plaintiff is experienced with the grievance process. His allegations in this instance are very serious,

contending that the Defendants' actions caused the outright denial of his appeal on technical grounds.  The Court finds it unlikely that he would have let the matter go after the summary denial of his third grievance attempt.  Meanwhile, a significant part of the Defendants' defense in this case is that the failure to mail Plaintiff's appeal was merely negligent because the bureaucratic procedures at the prison were so inefficient that it could be expected to take as long as *seven days* to put a stamp on a letter and drop it in the mailbox.  Given this level of inefficiency, it is very reasonable to believe that Plaintiff's appeal of his formal grievance was simply lost, or has been filed somewhere where it cannot be located.  In this situation, therefore, the Court is more inclined to credit Plaintiff's testimony than the contentions of the Defendants.  Where the weight of the evidence tilts in favor of the Plaintiff's position, Plaintiff's claims as to the failure to mail his appeal cannot be dismissed for failure to exhaust administrative remedies.

Plaintiff's claims as to the subsequent failure to deliver the appellate court's order in time for him to file a motion for reconsideration are subject to dismissal as recommended by the Magistrate Judge.  Neither party has objected to the recommendation, and there is no evidence in the record to indicate that Plaintiff filed a grievance as to this second incident.  That claim is therefore **DISMISSED** as to all Defendants.

**2.     Failure to State a Claim – Vicarious Liability**

Defendants next contend that Plaintiff's claims against Warden Terry and Deputy Warden Perry should be dismissed for failure to state a claim because there is no *respondeat superior* liability under Section 1983.  Their argument is more appropriate for a summary judgment motion.  At this stage of the case, prior to the development of an evidentiary record, Plaintiff's complaint does state a claim against Perry and Terry in that it alleges that they had direct involvement in the failure to deliver his mail.  As Defendants note, it is well-established that "supervisory officials are not liable under [Section 1983] for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  What Defendants fail to note is that supervisory defendants may be held liable if they personally participated in the alleged constitutional violations or if there is a "causal connection" between their actions and the alleged violations." Id.  Such a causal connection may be shown by evidence of either (1) a custom or policy that results in deliberate indifference to constitutional rights or (2) a history of widespread abuse that puts the responsible supervisor on notice of the need to correct the alleged deprivation. Id.

Plaintiff has alleged just such a causal connection. In his Complaint he alleges that Deputy Warden Perry admitted to Plaintiff that he had told Warden Terry about the problem with the mail room many times but that the Warden Terry had failed to do anything about it. Attached to his Complaint is a previous grievance in which Plaintiff had complained of the prison's failure to send court mail in a timely manner. Plaintiff has also indicated that problems with the untimely delivery of mail have been ongoing. These allegations are sufficient to state a claim that there was a history of widespread abuse or a custom or policy of failing to process court mail in a timely fashion.

### 3. Failure to State a Claim – Intentional Misconduct

Defendants next contend that Plaintiff fails to state a claim against Officer Ducote because the conduct he alleges is merely negligent, rather than intentional, and therefore does not constitute a violation of Section 1983. Plaintiff's Complaint, however, explicitly alleges that the conduct was intentional. The specific factual allegations of the Complaint are sufficient to indicate at the very least Defendants were deliberately indifferent to inmates' rights of access to the courts and allowed a custom or policy of untimely mailing to persist despite numerous grievances.

This case is before the Court on a motion to dismiss, not a motion for summary judgment. Defendants in their objections to the Recommendation rely on two cases

from the Fifth Circuit – Richardson v. McDonell, 841 F.2d 120 (5th Cir. 1988) and Jackson v. Procunier, 789 F.2d 307 (5th Cir. 1986) – to support their argument that a claim based on the delay of mail is actionable only if it is intentional.  Even if these cases are accepted as persuasive authority, they are readily distinguishable from this case and have no application to the decision of the present motion.  As the Magistrate Judge explained in his Recommendation, the primary holding of Richardson is that a plaintiff must show that he was legally prejudiced by the delay.  There can be no question that the Plaintiff was legally prejudiced by the delay that he alleges in this case, as his appeal was dismissed for untimeliness even though he had submitted it for mailing five days before the deadline for appeal.

More importantly for purposes of this case, it should be noted that Richardson and Jackson are both *summary judgment* cases.  In Jackson the Fifth Circuit reversed and remanded the case because the plaintiff "had not received an opportunity to produce *evidence* demonstrating the intentional conduct by prison officials." Richardson, 841 F.2d at 122 (emphasis added).  In Richardson, the Fifth Circuit found that "the summary judgment *evidence* belies intentional misconduct by prison officials against Richardson."  Id. (emphasis added).  In both holdings, the key word is *evidence*.  If Defendants move for summary judgment after the conclusion of discovery and the opportunity to develop a complete evidentiary record, the plaintiff

will be required to demonstrate at that time that there is sufficient evidence to create genuine issues of material fact as to his claim.  <u>See</u> Fed. R. Civ. P. 56.  Defendants should have taken note of this distinction, given the fact that the word "evidence" is repeated five times in the paragraph discussing <u>Richardson</u> and <u>Jackson</u> on page 12 of their Objection.

     A motion to dismiss, however, is not about evidence.  It is about the pleadings.  Plaintiff need only show that the allegations in his Complaint, taken as true and construed in the light most favorable to the Plaintiff, state a claim upon which relief can be granted and are sufficient to raise a right to relief above the speculative level.  <u>See</u> <u>Mills v. Foremost Ins. Co.</u>, 511 F.3d 1300, 1303 (11th Cir. 2008).  Plaintiff's allegations in this case do so.  He has plainly alleged that the violations were intentional.  He has given sufficient detail to raise his claim above the speculative level.  As such, he is entitled to the opportunity to discover evidence to support his claims.  Given the advantages that adhere to the State in Section 1983 cases and the inherent disadvantages of being a *pro se* litigant in prison, he will no doubt find it difficult to do so.

     Defendants argue that Plaintiff's Complaint sets forth only a claim of negligence because Plaintiff quotes an alleged statement in which Officer Ducote admits to negligence. According to the Complaint, when Plaintiff confronted Officer

Ducote regarding the delays Officer Ducote responded, "If you want your legal mail to be on time send it two weeks earlier because it's only one of us in here and we don't always have time to take it to the business office when we get it." Complaint p. 4-5. The fact that Plaintiff recites this apparently exculpatory statement from one of the Defendants does not mean that Plaintiff himself accepts the truth of the statement. Plaintiff expressly alleges that the delays were intentional.

Furthermore, accepting the truth of Officer Ducote's alleged statement, the Court is not prepared to concede at this early stage of the case that routine delays of *two weeks* in mailing court documents can be shrugged off as mere negligence rather than deliberate indifference. Court documents are frequently time sensitive, particularly in the case of appeals courts. Sometimes these time windows are quite short: thirty days in the case of filing a notice of appeal; just ten days in the case of filing a motion for reconsideration. A finder of fact might determine that a routine practice of tolerating two-week delays in mailing and delivering legal documents could constitute deliberate indifference to inmates' rights of access to the courts, amounting to an intentional violation.

### 4. Qualified Immunity

Defendants contend that they are protected by qualified immunity because the constitutional right that Plaintiff alleges was not "clearly established." This

11

contention is without merit. The rights that Plaintiff asserts in his complaint were clearly established by Eleventh Circuit precedent at the time of the alleged violations. In a case essentially on-point to this case, the Eleventh Circuit has held that a prison's practice of allowing mail to accumulate several days before delivery violated an inmate's right of access to the courts. In that case, Gramegna v. Johnson, 846 F.2d 675 (11th Cir. 1988), the court spelled out this right quite forcefully:

> The states are required to provide prisoners access to the courts to challenge violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974). As a necessary corollary to this right, the states must permit the prisoner meaningful access to the postal system as this is typically the only manner in which a prisoner may communicate with the court. See Bounds v. Smith, 430 U.S. 817, 824-25 (1977) (state must provide inmates with stamps to mail legal documents). "Regulations and practices that unjustifiably obstruct ... the right of access to the courts are invalid." Procunier, 416 U.S. at 419.

846 F.2d at 677 (parallel citations omitted).

In their Objection, Defendants do not acknowledge the existence of the Gramegna decision, but instead rely upon Plaintiff's failure to meet his burden of producing materially similar case law. Although it is true that Plaintiff failed to discover Gramegna, an attorney has a professional obligation to seek out the controlling legal authority in a case and an ethical obligation to disclose to the Court

legal authority known to be directly adverse to his client even if that authority is not disclosed by opposing counsel.  See Georgia Rules of Professional Conduct R. 3.3(a)(3).  Defendants should not expect the Court to be ignorant of the law.

**CONCLUSION**

In accordance with the Recommendation of the United States Magistrate Judge, and for the additional reasons set forth above, Defendants' Motions to Dismiss (Docs. 12, 27) are **DENIED** as to Plaintiff's claims against Defendants in their individual capacities arising from the alleged delay in the mailing of his appeal on January 7, 2008, and are **GRANTED** as to Plaintiff's claims regarding the delay in his receipt of the dismissal mailed by the Court of Appeals on February 29, 2008 and as to Plaintiff's claims against Defendants in their official capacities.

**SO ORDERED**, this 27th day of March, 2009.

                                        S/ C. Ashley Royal
                                        C. ASHLEY ROYAL
                                        UNITED STATES DISTRICT JUDGE

chw